# In the United States Court of Federal Claims

No. 25-1795C
(Filed Under Seal: May 12, 2026)
(Reissued: May 28, 2026)*
**FOR PUBLICATION**

```
**************************************
PRIMARY HEALTH CARE, LLC,           *
D/B/A ANGLIN DISTINCTIVE            *
HEALTH CARE JV, LLC,               *
                                    *
                Plaintiff,          *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant.          *
                                    *
**************************************
```

*Meghan F. Leemon*, PilieroMazza PLLC, Washington, D.C., for Plaintiff. Also on the briefs was *Eric A. Valle*, PilieroMazza PLLC, Washington, D.C.

*Ioana C. Meyer*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. Also on the briefs were *Brett A. Shumate*, Assistant Attorney General; *Patricia M. McCarthy*, Director, and *Steven Michael Mager*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice.

## OPINION AND ORDER

In this post-award bid protest, Primary Health Care, LLC challenges a Small Business Administration ("SBA") finding that it is "other than small." Compl. ¶ 4 (ECF 1). The parties' cross-motions for judgment on the administrative record are fully briefed, and I have heard oral argument.[1] Defendant's motion to file its reply out of time (ECF 27) is **GRANTED**. *See* Tr. at 6.

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on May 12, 2026, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by May 26, 2026. The parties notified the Court on May 26 that there were no proposed redactions. The Court hereby releases publicly the opinion and order of May 12 in full.

[1] Pl.'s MJAR (ECF 23); Def.'s Mot. to Dismiss, Cross-MJAR & Resp. (ECF 25) ("Def.'s MJAR"); Pl.'s Resp. & Reply (ECF 26); Def.'s Reply (ECF 28); *see also* Oral Arg. Tr. ("Tr.") (ECF 36).

Because the SBA's decision was not arbitrary or capricious, Plaintiff's motion for judgment on the administrative record is **DENIED**. Defendant's cross-motion for judgment on the administrative record is **GRANTED**.

<u>BACKGROUND</u>

I. <u>Regulatory Background</u>

The SBA administers statutes and regulations intended to ensure that small businesses can compete for and obtain federal procurement contracts. Two aspects of those regulations are relevant here: size determinations and the mentor-protégé program.

A. Size Determinations

The federal government sets goals for awarding procurement contracts to small businesses. *See* 15 U.S.C. § 644(a)(1)(C), (g). To meet those goals, agencies regularly "set aside" procurements that only small businesses may compete for.

Whether an offeror counts as "small" depends on whether it meets the SBA's size standard for that procurement. The SBA's size standards derive, in turn, from industry-specific standards listed in the North American Industry Classification System ("NAICS"). 13 C.F.R. §§ 121.101(a), 121.201, 121.402(a)–(b) (2022).[2]

The general rule for joint ventures is that they do not qualify as small unless each member of the venture is small. 13 C.F.R. § 121.103(h)(1)(i). There is one relevant exception to that rule, discussed below.

When a business bids on a small-business set-aside contract, it must self-certify that it meets the solicitation's size standard. 13 C.F.R. §§ 121.404(a), 121.405(a). Offerors submit a self-certification "as part of [their] initial offer or response which includes price." 13 C.F.R. § 121.404(a). The self-certification is generally accepted at face value, absent contrary evidence or an objection from other offerors. *See* 13 C.F.R. § 121.405(b).

The date of self-certification is the default date for determining the offeror's size. 13 C.F.R. § 121.404(a). That "snapshot-in-time" rule means that if a business qualifies as small under the relevant size standard on the date when it submits an offer, it still qualifies as small even if it outgrows the size standard by the time the contract is ultimately awarded. 13 C.F.R. § 121.404(g); *see also* Small Business Size Regulations, 76 Fed. Reg. 8222, 8249 (Feb. 11, 2011).

---

[2] All Code of Federal Regulations citations are to the version in place at the date of the Solicitation, November 15, 2022, unless otherwise specified. *See Cont. Servs., Inc. v. United States*, 104 Fed. Cl. 261, 264 n.10 (2012); *Int'l Mgmt. Servs., Inc. v. United States*, 80 Fed. Cl. 1, 9 n.14 (2007).

The SBA authorizes offerors participating in a set-aside solicitation to initiate "size protests" challenging another offeror's eligibility. 13 C.F.R. §§ 121.405(c), 121.1001(a)(1)(i), (2)(i). The SBA Government Contracting Area Office reviews the challenged offeror and issues a size determination. 13 C.F.R. §§ 121.1008, 121.1009. That size determination may be appealed to the SBA Office of Hearings and Appeals. 13 C.F.R. § 121.1101.

## B. Mentor-Protégé Program

The small business mentor-protégé program incentivizes experienced government contracting firms to mentor developing small-business protégés. 13 C.F.R. § 125.9. Most importantly for this case — in an exception to the usual size rule mentioned above — the mentor and protégé may form joint ventures to compete for contracts as small businesses. A mentor-protégé joint venture qualifies as small for a procurement so long as the *protégé* would qualify as small, and provided other conditions are met. 13 C.F.R. §§ 121.103(h)(1)(ii), 125.9(d)(1).

To participate in the program, the mentor and protégé must enter a written mentor-protégé agreement, which must then be approved by the SBA. 13 C.F.R. § 125.9(e). The contents of mentor-protégé agreements are governed by regulation. Among other requirements, a mentor-protégé agreement "must provide that either the protégé or the mentor may terminate the agreement with 30 days advance notice to the other party to the mentor-protégé relationship and to SBA." 13 C.F.R. § 125.9(e)(4). The SBA conducts annual evaluations of the mentor-protégé relationship to ensure that the protégé is receiving sufficient developmental assistance from its mentor. 13 C.F.R. § 125.9(g).

With an approved agreement in hand, the mentor and protégé may joint venture as a small business. The joint venture must be governed by a joint venture agreement — in addition to the mentor-protégé agreement — which must also contain certain mandatory terms. *See* 13 C.F.R. § 125.8(b)(2). The parties emphasize that a joint venture agreement must have provisions: (1) designating a small business as the "managing venturer" of the joint venture; (2) identifying a named employee of the protégé as manager of the joint venture; (3) requiring that the protégé own a majority share of the joint venture; and (4) "[o]bligating all parties to the joint venture to ensure performance of a contract set aside or reserved for small business and to complete performance despite the withdrawal of any member." 13 C.F.R. § 125.8(b)(2)(ii), (iii), (viii). The joint venture agreement also has to make the protégé responsible for at least forty percent of the contracted work. 13 C.F.R. § 125.8(c).

The SBA evaluates the compliance of mentor-protégé joint venture agreements, just as it makes size determinations. That evaluation, though, is made

as of the date of the final proposal revisions. 13 C.F.R. § 121.103(h)(1)(ii); *see also* 13 C.F.R. §§ 121.404(d), 125.8(b)–(c).

The SBA set that date as the point for review as part of its 2020 overhaul of the mentor-protégé programs. *See* Consolidation of Mentor-Protégé Programs and Other Government Contracting Amendments, 85 Fed. Reg. 66146, 66153 (Oct. 16, 2020). In doing so, the SBA indicated that it did not intend to change the snapshot-in-time rule for size determinations. *Id.* But it also said that "compliance with … joint venture agreement requirements can justifiably change during the negotiation process," and that it "does not believe that the joint venture should be able to point back to its initial offer in which the small business protégé partner to the joint venture appeared to be in control." *Id.* In other words, the agency implemented a different evaluation date to ensure that noncompliant joint ventures could not exploit the snapshot-in-time rule to skirt joint venture agreement requirements.

## II.  Factual Background

On October 24, 2022, Distinctive Home Care, Inc. d/b/a Distinctive Health Care ("Distinctive") and Anglin Consulting Group, Inc. ("Anglin") entered into an SBA-approved mentor-protégé agreement. Admin. R. ("AR") at 1905–06, 1908–13. Distinctive, an established firm, served as mentor to Anglin, a small business protégé. *Id.*

On November 15, 2022, the Defense Health Agency ("Agency") issued Solicitation No. HT001523R0003 ("Solicitation"), a small-business set-aside. AR 1. The parties agree that Anglin was a small business under the applicable NAICS code, while Distinctive was not. *See* AR 2098–99.

Two days later, Distinctive and Anglin formed Plaintiff, a mentor-protégé joint venture. AR 1942–73, 2076. Plaintiff is governed by a joint venture agreement, plus an addendum tailored to the Solicitation. AR 1943–73, 2098–2103. The joint venture agreement and addendum align with the mandatory terms and work allocation requirements of Sections 125.8(b) and (c). *Compare* AR 1943–73, 2098–2103 (joint venture agreement and addendum), *with* 13 C.F.R. § 125.8(b)(2)–(c) (requiring specified joint venture agreement provisions and protégé workshare). In its initial offer responsive to the Solicitation, Plaintiff self-certified that it was an eligible mentor-protégé joint venture and that Anglin's annual receipts did not exceed the relevant size standard. AR 749.1–.4, 749.25–.29.

On January 30, 2024, Distinctive notified the SBA by email that it wished to terminate its mentor-protégé agreement with Anglin. AR 2097. But although the mentor-protégé agreement was terminated, Plaintiff continued to exist as a joint venture between Anglin and Distinctive, and continued with the procurement process

- 4 -

for the Solicitation. *See* AR 750, 867 (submitting revised proposals on November 13, 2024 and January 16, 2025). When the Agency set a date for final proposal revisions, Plaintiff responded with its final proposal. AR 955–57.

The Agency circulated a pre-award notice that included Plaintiff on a list of apparently successful offerors. AR 992–94. But another apparently successful offeror filed a size protest alleging that Plaintiff "was not formed pursuant to an SBA-approved mentor-protégé relationship," and that Plaintiff was other-than-small based on Distinctive's annual receipts. AR 1039–41; *see also* 13 C.F.R. § 121.1001(a)(1)(i) (permitting any eligible offeror to file a size protest).

The SBA Area Director determined that, although Plaintiff was small when it submitted its initial offer, Plaintiff was other-than-small for the Solicitation because Distinctive and Anglin no longer held a valid mentor-protégé agreement as of the final proposal revision date. AR 3389–92. Plaintiff appealed the decision to the SBA Office of Hearings and Appeals. AR 3395–96.

During the appellate process, Anglin informed the contracting officer that it was withdrawing from the joint venture as of August 14, 2025. AR 3520. Distinctive confirmed to the SBA that Anglin had withdrawn from Plaintiff, and that Distinctive was now the "Primary for the JV." AR 3504.

The SBA Office of Hearings and Appeals denied Plaintiff's appeal and affirmed the size determination of the Area Office. *Primary Health Care LLC d/b/a Anglin Distinctive Health Care JV, LLC*, SBA No. SIZ-6370, at \*10 (Sept. 17, 2025). The administrative judge reasoned that because Distinctive and Anglin had terminated the mentor-protégé agreement prior to the final proposal revision date, Plaintiff no longer benefited from the size exception provided by 13 C.F.R. § 121.103(h)(1)(ii). *Id.* at \*10. He further reasoned that a mentor-protégé joint venture must comply with 13 C.F.R. § 125.8(b) and (c) at the final proposal revision date, and Plaintiff could not do so if neither partner was properly a mentor or protégé because the mentor-protégé agreement had been terminated. *Id.*

## DISCUSSION

## I. Legal Standards

### A. Jurisdiction and Standing

The United States Court of Federal Claims has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Court's

jurisdiction encompasses protests of the SBA's size determinations because those decisions "are actions 'in connection with a proposed procurement.'" *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015).

To challenge a size determination, the protestor must demonstrate that it has standing. *Straughan Env't, Inc. v. United States*, 135 Fed. Cl. 360, 371 (2017) (citing *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)). That means a protestor must satisfy both Article III standing and the "interested party" requirement imposed by the Tucker Act. *See Barbaricum LLC v. United States*, 172 Fed. Cl. 186, 194–95 (2024).

Article III standing requires an injury that is traceable to an allegedly defective procurement process and redressable by this Court. *Id.* at 195 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff meets that standard here: the SBA's size determination disqualified Plaintiff from competing for the Solicitation, AR 3392, 3479, Plaintiff claims the SBA misapplied the relevant regulations in the size determination, Pl.'s MJAR at 13, and the Court can provide relief, *see ELB Servs., LLC v. United States*, 172 Fed. Cl. 233, 249–50 (2024) (vacating and remanding an arbitrary and capricious Office of Hearings and Appeals decision affirming an SBA size determination).

As for statutory standing, an "interested party" is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Percipient.AI, Inc. v. United States*, 153 F.4th 1226, 1243 (Fed. Cir. 2025). An offeror has a direct economic interest in a post-award protest if it "had a substantial chance of being awarded the contract." *DecisionPoint Corp. v. United States*, 174 Fed. Cl. 475, 481 (2024) (quoting *McVey Co., Inc. v. United States*, 111 Fed. Cl. 387, 405 (2013)); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).

Plaintiff easily satisfies that requirement. Plaintiff submitted an offer on the Solicitation and the Agency informed Plaintiff that it was an "apparently successful offeror." AR 992–94. Had the SBA found that Plaintiff was small, the Agency intended to award Plaintiff a contract. AR 1038. That gives Plaintiff an economic interest in this protest.

Defendant argues that Plaintiff lacks Article III and statutory standing. *See* Def.'s MJAR at 18–21. Because the mentor-protégé agreement is no longer in place and Anglin, the small-business partner, has withdrawn from the joint venture — the argument goes — Plaintiff cannot be awarded the contract, *id.*, meaning that it lacks an economic interest and its injury cannot be judicially redressed. But as discussed below, Plaintiff's principal argument is that the size of a mentor-protégé joint venture

may only be evaluated as of the initial offer. If that were true, subsequent changes to the joint venture might not matter, and Plaintiff could receive an award even if its membership changed.[3] Because this Court assesses standing on the assumption that a protestor's substantive arguments prevail, *REV, LLC v. United States,* 91 F.4th 1156, 1164 (Fed. Cir. 2024); *see also Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022), Defendant's standing theory folds into the merits.

## B. Standard of Review

The Tucker Act directs this Court to review agency decisions in bid protests through the standard set by the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2). Specifically, the Court reviews whether an agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Here, the relevant decision is the SBA Office of Hearings and Appeals' resolution of the size protest. The Court must set aside an Office of Hearings and Appeals decision if it fails to properly interpret and apply the relevant regulations. *See, e.g.*, *ELB Servs.*, 172 Fed. Cl. at 246. A decision may also be arbitrary and capricious if the Office of Hearings and Appeals fails to follow its precedent. *See Consol. Safety Servs., Inc. v. United States*, 167 Fed. Cl. 543, 568–69 (2023).

This Court has said it gives "special deference" to decisions by the Office of Hearings and Appeals because it interprets a "comprehensive regulatory scheme" that a "nonexpert court must be careful not to disrupt." *See Darton Innovative Techs., Inc. v. United States*, 153 Fed. Cl. 440, 451 (2021) (quoting *Eagle Design and Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002)), and *ELB Servs.*, 172 Fed. Cl. at 242–43 (2024). That level of deference presumably comports with how courts treat agency interpretations in other fields. *See Def. Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 370–72 (2023) (discussing, *inter alia*, *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), *Auer v. Robbins*, 519 U.S. 452 (1997), and *Kisor v. Wilkie*, 588 U.S. 558 (2019)). For example, when a regulation is ambiguous even after applying the familiar tools of construction, an agency's reasonable interpretation is entitled to judicial deference if "the character and context of the agency interpretation entitles it to controlling weight." *See Kisor*, 588 U.S. at 574–76. And even outside that situation, a court can treat agency interpretations as "a body of experience and informed judgment to which [it] may properly resort for guidance." *See Skidmore*, 323 U.S. at 140.

---

[3] The government points to mechanisms for re-evaluating Plaintiff's size. *See* Tr. at 83–86; *see also* 13 C.F.R. § 121.404(a)(1)(i)(B), (g)(2). But the agency has not invoked those procedures yet, and I can only speculate as to whether it ever will.

## II. Merits

Plaintiff's problem is obvious. Although it was formed as a joint venture between a mentor and a protégé, no mentor-protégé agreement was in effect by the time of final proposal revisions. The SBA found that Plaintiff was other-than-small on that basis. Plaintiff argues that the SBA's conclusion is arbitrary and capricious — and that it is eligible for award — simply because it had a valid mentor-protégé agreement at the time of its initial offer, on the theory that the snapshot-in-time rule renders subsequent developments irrelevant. Pl.'s MJAR at 15–16. That argument is creative, but does not succeed.

The better reading of the regulations is that — as the SBA concluded — the existence of a valid mentor-protégé agreement continues to matter at least through the date of final proposal revisions. All parties agree that the SBA is required to evaluate a joint venture agreement between a mentor and protégé as of the date of final proposal revisions. Pl.'s MJAR at 6, 13; Def.'s MJAR at 15, 22–23. Several aspects of that review allow the SBA to consider whether a mentor-protégé relationship still exists.[4]

Review as of the date of final proposal revisions looks to the requirements of 13 C.F.R. § 125.8(b) and (c), which set out the necessary characteristics of the joint venture. *See* 13 C.F.R. §§ 121.103(h)(1)(ii), 121.404(d). And the cross-referenced requirements, fairly read, demand that the joint venture be based on a valid mentor-protégé agreement. For example, 13 C.F.R. § 125.8(b)(2) presumes the joint venture agreement is "between a protégé small business and its SBA-approved mentor[.]" If that relationship no longer exists, then the joint venture agreement can no longer comply because one of the premises of a valid agreement is unmet. Section 125.8(c)(3), furthermore, requires that the small business protégé partner complete at least forty percent of the work performed by the joint venture. If there is no mentor-protégé agreement, no member of the joint venture is a "protégé," and the SBA cannot determine that a protégé will complete the required proportion of the work. The SBA did not act arbitrarily or capriciously, therefore, in concluding that review of the joint venture agreement as of the date of the final proposal revision includes consideration of whether a mentor-protégé agreement has expired.

Plaintiff presses several counterarguments, but none of them overcomes the SBA's position.

---

[4] The parties dispute how that interpretation relates to the snapshot-in-time rule: *i.e.*, when size is determined and how many size determinations the regulations contemplate. *See* Pl.'s MJAR at 15–16; Def.'s MJAR at 22–23; Pl.'s Resp. & Reply at 8; Def.'s Reply at 7. I do not intend to reach broader or more theoretical questions that extend beyond the specific facts of this case.

First, Plaintiff characterizes the review required by Sections 121.404(d) and 121.103(h)(1)(ii) as a "check-the-boxes" exercise limited to the face of the joint venture agreement. *See* Pl.'s MJAR at 16; Tr. at 16–18. Plaintiff argues that under the snapshot-in-time rule, size is determined once: on the date of the initial offer. Pl.'s MJAR at 14–15 (citing 13 C.F.R. § 121.404(g)). If that is so, then the SBA is precluded from determining size as of final proposal revisions, in which case the determinations made as of the final revision date must involve standards *other* than size. *Id.* at 16 (citing 13 C.F.R. § 125.8(b), (c)). That, in Plaintiff's view, essentially limits the SBA's review to a facial check of the joint venture agreement. *Id.*; *see also* Tr. at 16–17.

Even if Plaintiff's theory is linguistically conceivable, the SBA's interpretation (as explained above) is justified by the text as well. Meanwhile, Plaintiff's theory effectively compels the SBA to ignore accurate facts in the name of a legal fiction — all so that a large business can bid on a small-business set aside. The SBA's interpretation avoids that problem. Courts are typically leery of strained textual interpretations that conflict with a regulatory system's overall design. *See Baude v. United States*, 955 F.3d 1290, 1301 (Fed. Cir. 2020) (citing *Maracich v. Spears*, 570 U.S. 48, 60 (2013)); *Desert Citizens Against Pollution v. EPA*, 699 F.3d 524, 527–28 (D.C. Cir. 2012); *Cold Spring Granite Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 98 F.3d 1376, 1378 (D.C. Cir. 1996). Given that there is a textual basis for the SBA's decision, it was not arbitrary and capricious for the SBA to reject Plaintiff's approach. *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 730 n.14 (1985).

Second, Plaintiff contends that the SBA did not follow its own precedent applying the snapshot-in-time rule to mentor-protégé agreements that expired after initial offers. The SBA may act arbitrarily and capriciously when the Office of Hearings and Appeals departs from its own decisions. *See Consol. Safety Servs., Inc.*, 167 Fed. Cl. at 568–69. And Plaintiff cites some Office of Hearings and Appeals decisions where joint ventures with expired or terminated mentor-protégé agreements still qualified for set-aside contracts. In *Global Dynamics, LLC*, the Office of Hearings and Appeals explained that the joint venture still qualified for the set-aside contract because the joint venture members "were an SBA-approved mentor and protégé on [the date of initial offer], the date to determine size." SBA No. SIZ-6012, at *18 (2019). Similarly, in *Kentucky Building Maintenance, Inc.*, the SBA determined that a joint venture qualified for a set-aside contract even though the mentor had terminated the mentor-protégé agreement prior to the contract award. SBA No. SIZ-6001, at *16–17 (2019). Viewed in isolation, those decisions appear inconsistent with the one in this case.

On closer analysis, though, those decisions pre-date a change in SBA regulations. The versions of the regulations in effect for those cases, 2012 and 2017

respectively, did not require evaluating joint venture agreement compliance as of the final proposal revision date. *See* 13 C.F.R. § 121.404(d) (2012); *id.* § 121.404(d) (2017); 13 C.F.R. § 121.103(h) (2012); *id.* § 121.103(h) (2017). The relevant versions of Section 121.404(d) required proposed subcontractors and nonmanufacturers to be compliant on the final proposal revision date, but made no reference to joint ventures. *See* 13 C.F.R. § 121.404 (2012 & 2017).

That language was revised when the SBA updated the mentor-protégé program in 2020, thereby calling into question the precedential effect of *Global Dynamics* and *Kentucky Building Maintenance. Compare Strategic All. Sols. LLC*, SBA No. VET-278, at *14 (Jan. 12, 2023) (determining that an Office of Hearings and Appeals decision based on an earlier version of a regulation was "inapposite"), *with Consol. Safety Servs.*, 167 Fed. Cl. at 565–67 (finding that an Office of Hearings and Appeals' decision was arbitrary and capricious when it conflicted with prior decisions interpreting the same NAICS manual). The Office of Hearings and Appeals based its decision in this case not on those precedents, but on ones that post-dated the revision. *Primary Health Care*, SBA No. SIZ-6370, at *9 (citing *Focus Revision Partners*, SBA No. SIZ-6188, at *21 (2023), and *Kako'o Spectrum Healthcare Sols.*, SBA No. SIZ-6293, at *4 (2024)). That sufficiently demonstrates that the SBA considered relevant precedent. *See Precise Sys., Inc. v. United States*, 122 Fed. Cl. 263, 270–71 (2015).

Plaintiff argues that the revised regulations were not supposed to change the snapshot-in-time rule for size determinations, and therefore could not have made it possible to review the existence of a mentor-protégé agreement after the initial proposal. Pl.'s Resp. & Reply at 7–8 (quoting 85 Fed. Reg. at 66153). Plaintiff notes that when the SBA specified review of joint venture agreements as of the final proposal revision, it did not intend to depart from making size determinations as of the initial offer:

> SBA does not view this as a departure from the snapshot in time rule. [A business's size is] determined at one specific point in time — the date on which a [business] submits its initial offer including price.

85 Fed. Reg. at 66153. But Plaintiff fails to account for the SBA's very next statement:

> [C]ompliance with … [the] joint venture agreement requirements can justifiably change during the negotiation process. If an offer changes during negotiations in a way that would make a large business mentor joint venture partner be in control of performance, for example, SBA does not believe that the joint venture should be able to point back to its initial offer in which the small business protégé partner to the joint venture appeared to be in control.

*Id.* That suggests that the SBA specifically intended to foreclose the argument Plaintiff is making now, namely, that an offeror can "point back to its initial offer" when the relationship between the joint venturers has changed. *Id.* To the extent the SBA's statements in the Federal Register conflict with the text of the regulations it actually adopted, the latter control. *See eSimplicity, Inc. v. United States*, 162 Fed. Cl. 372, 382 (2022) (citing *Glycine & More, Inc. v. United States*, 880 F.3d 1335, 1344 (Fed. Cir. 2018)); *United States v. Dish Network L.L.C.*, 954 F.3d 970, 979 (7th Cir. 2020); *Elevance Health, Inc. v. Becerra*, 736 F. Supp. 3d 1, 23 (D.D.C. 2024).

Third, Plaintiff argues that the SBA's interpretation is unworkable and potentially manipulable. For example, an agency (or a competing bidder) could draw out a procurement process long enough that a mentor-protégé agreement expires, disqualifying a mentor-protégé joint venture through no fault of its own. Tr. 39–40; Pl.'s MJAR at 17 (citing *Global Dynamics, LLC*, SBA No. SIZ-6012, at *18 (June 18, 2019)). Those concerns might have merit, but this Court's role is to apply the law to interpret regulations, not take sides in a policy debate on how the mentor-protégé program should be implemented. *See Loper Bright Ents. v. Raimondo*, 603 U.S. 369, 403–04 (2024). In any event, a mentor-protégé relationship may last several years, *see* 13 C.F.R. § 125.9(c)(4)(iv), which blunts any concerns of agency gamesmanship.

Finally, to the extent that Plaintiff's arguments have merit, at most they suggest that the SBA's regulations are ambiguous as to whether the SBA may consider the validity of a mentor-protégé agreement after the time of initial offers. Assuming there is such an ambiguity, the SBA's reasonable interpretation of its regulations is founded in its expertise and thus entitled to judicial deference. *See QED Grp. LLC v. United States*, 175 Fed. Cl. 349, 357–58 (2025) (noting that the agency would have received deference if it had interpreted the regulation at issue); *Veteran Elevated Sols., LLC v. United States*, 177 Fed. Cl. 402, 412 (2025); *Kisor,* 588 U.S. at 574–76.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record (ECF 23) is **DENIED** and Defendant's cross-motion for judgment on the administrative record (ECF 25) is **GRANTED**. Defendant's motion to file its reply out of time (ECF 27) is **GRANTED**.

Pursuant to the Court's October 29, 2025, Protective Order (ECF 13), this Opinion has been issued under seal. The transcript of oral argument is under seal as well. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **May 26, 2026**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access

- 12 -

to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

<u>s/ Stephen S. Schwartz</u>
STEPHEN S. SCHWARTZ
Judge